JUSTICE GRAY,
concurring and dissenting.
I concur in the Court’s statutory analysis and in the result it reaches on the equal protection issue, although I would reach that result under a different analysis. In addition, I disagree with the overly broad conclusion on which the Court bases its equal protection holding.
I agree with the Court that Stratemeyer is distinguishable from the present case and that it does not support the State Fund’s position here. I cannot agree, however, with the Court’s sweeping conclusion that cost alone can never justify a classification or distinction in the workers’ compensation arena. That conclusion, while not stated as such, results from the Court’s agreement with Heisler’s argument “that cost-control alone cannot justify discrimination” and the Court’s statement that “[c]ost-control alone cannot justify disparate treatment which violates an individual’s right to equal protection of the law.” This latter statement by the Court is circuitous at best. It suggests that disparate treatment can actually violate equal protection prior to a determination of whether the disparate treatment is rationally related to a legitimate governmental objective or interest. This is simply not the case and the Court puts the cart before the horse in so stating.
In any event, however, it is my view that the Court’s sweeping conclusion is incorrect and ill-advised. The entire workers’ compensation system is premised on an economic compromise determined to be in the best interests of all concerned: employees gave up the right to sue employers in tort for work-related injuries in exchange for a *286 guaranteed compensation system; employers avoided the potential of unlimited tort liabilities in exchange for required “no fault” compensation payments to injured workers. Indeed, the stated public policy objective of the Workers’ Compensation Act is to provide wage-loss benefits to injured workers “at a reasonable cost to the employer.” Section 39-71-105(1), MCA. Medical benefits, also to be provided without regard to fault, are based on “reasonableness” and “cost-effectiveness.” Sections 39-71-105(1) and 39-71-704(l)(a) and (b), MCA. Thus, to an extraordinary extent, the entire system is grounded in “cost control” of various kinds. The Court’s conclusion that cost control can never justify disparate treatment eviscerates the purpose and provisions of the Act.
Moreover, resolution of the present case does not require a sweeping conclusion of the type made by the Court. Here, the State Fund’s position is that operating an economical Plan Three system is a valid, legitimate governmental objective to which requiring prior authorization before changing treating physicians is reasonably related; stated differently, the State Fund contends that the prior authorization rule is a rational means of addressing the legitimate objective of ensuring that all primary medical care is both reasonable and necessary. The problem with that position is that the State Fund articulates no nexus between the prior authorization rule and the economic operation of Plan Three or the “reasonable and necessary medical care” objective. That is, the State Fund makes no showing of how the prior authorization rule actually achieves any cost control or cost reduction goals and I can conceive of none. Thus, while it is my view that cost control in its broadest sense — which may include a variety of considerations directed to maintaining, overall, a viable workers’ compensation system to the ultimate benefit of both employees and employers — can constitute a legitimate governmental objective in the workers’ compensation arena, I would conclude that no case has been made here that the prior authorization rule is rationally related to that objective. On that basis, I join the Court in holding that the prior authorization rule denies Heisler’s right to equal protection of the laws.